James M. Finberg (State Bar No. 114850)
Kelly M. Dermody (State Bar No. 171716)
Bill Lann Lee (State Bar No. 108452)
Heather H. Wong (State Bar No. 238546)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Attorneys for the Plaintiffs*
[Additional Plaintiffs' Counsel Listed on Signature Page]

Jay Cohen *(pro hac vice)*
Brad S. Karp *(pro hac vice)*
Daniel J. Toal *(pro hac vice)*
Liza M. Velazquez *(pro hac vice)*
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Attorneys for Defendant Citigroup Global Markets Inc., d/b/a Smith Barney*
[Additional Defense Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO / OAKLAND DIVISION

| | |
|---|---|
| RENEE FASSBENDER AMOCHAEV, DEBORAH ORLANDO, and KATHRYN N. VARNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITIGROUP GLOBAL MARKETS, INC., d/b/a SMITH BARNEY,<br><br>Defendant. | Case No. C-05-1298 PJH<br><br>**STIPULATION AND [~~PROPOSED~~] ORDER FOR AMENDED COMPLAINT** |

**STIPULATION**

WHEREAS, Plaintiffs filed their Complaint on March 31, 2005;

WHEREAS, Defendant filed an Answer and Affirmative Defenses to Plaintiffs' Complaint on June 10, 2005;

WHEREAS, on September 15, 2006, this Court granted permission for Judy Weil to withdraw as a putative class representative in this matter;

WHEREAS, two individuals, Ivy So and Lisa Strange Weatherby, wish to join this action as putative class representatives;

WHEREAS, Plaintiffs wish to file their First Amended Complaint, attached hereto as Exhibit A, to reflect Ms. Weil's withdrawal from this action as a putative class representative, join Ms. So and Ms. Weatherby as putative class representatives in the action, and amplify and clarify certain other allegations; and

WHEREAS, Plaintiffs have provided a copy of their proposed First Amended Complaint to Defendant for its review;

IT IS HEREBY STIPULATED AND AGREED, by and between the parties through their respective counsel of record that:

1. Plaintiffs will file their First Amended Complaint, attached hereto as Exhibit A, within three business days of the date the Court grants Plaintiffs leave to do so;

2. Defendant will answer, move or otherwise respond to the First Amended Complaint on or before December 29, 2006; and

3. The final date for further amendments to the pleadings is January 26, 2007. Thereafter, pleadings may be amended only upon a showing of good cause by the party seeking the amendment.

IT IS FURTHER STIPULATED AND AGREED that, by stipulating to this amendment, defendant does not in any way stipulate—and, in fact, denies—that the claims in plaintiffs' First Amended Complaint have any merit, that this action satisfies the requirements for class certification, or that any of the plaintiffs would be appropriate representatives of the putative class.

IT IS FURTHER STIPULATED AND AGREED that, by stipulating to this amendment, defendant does not waive any defense against any claim in the First Amended Complaint.

SO STIPULATED.

Dated: November 27, 2006

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By: */s/ Heather H. Wong*
Heather H. Wong

James M. Finberg (State Bar No. 114850)
Kelly M. Dermody (State Bar No. 171716)
Bill Lann Lee (State Bar No. 108452)
Heather H. Wong (State Bar No. 238546)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Elizabeth A. Alexander *(pro hac vice)*
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
150 Fourth Avenue, N., Suite 1650
Nashville, TN 37219-2423
Telephone: (615) 313-9000
Facsimile: (615) 313-9965

Adam T. Klein *(pro hac vice)*
Justin M. Swartz *(pro hac vice)*
Piper Hoffman *(pro hac vice)*
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

Cyrus Mehri *(pro hac vice)*
Lisa M. Bornstein *(pro hac vice)*
Sandi Farrell *(pro hac vice)*
Anna M. Pohl *(pro hac vice)*
MEHRI & SKALET, PLLC
1250 Connecticut Ave, NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997

*Attorneys for Plaintiffs*

Dated: November 27, 2006

PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP

By: */s/ Daniel J. Toal*
Daniel J. Toal

Jay Cohen *(pro hac vice)*
Brad S. Karp *(pro hac vice)*
Daniel J. Toal *(pro hac vice)*
Liza M. Velazquez *(pro hac vice)*
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

Malcolm A. Heinicke (State Bar No. 194174)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

*Attorneys for Defendant*

**ORDER**

PURSUANT TO STIPULATION, IT IS SO ORDERED.

Dated: 11/28/06

The Honorable Phyllis J. Hamilton

UNITED STATES DISTRICT COURT
IT IS SO ORDERED
Judge Phyllis J. Hamilton
NORTHERN DISTRICT OF CALIFORNIA

# EXHIBIT A

James M. Finberg (State Bar No. 114850)
Kelly M. Dermody (State Bar No. 171716)
Bill Lann Lee (State Bar No. 108452)
Heather H. Wong (State Bar No. 238546)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Elizabeth A. Alexander
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
150 Fourth Avenue, N., Suite 1650
Nashville, TN 37219-2324
Telephone: (615) 313-9000
Facsimile: (615) 313-9965

Cyrus Mehri, *pro hac vice*
Lisa M. Bornstein, *pro hac vice*
Sandi Farrell, *pro hac vice*
Anna M. Pohl, *pro hac vice*
MEHRI & SKALET, PLLC
1250 Connecticut Ave, N.W., Suite 300
Washington, D.C. 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997

Adam T. Klein, *pro hac vice*
Piper Hoffman, *pro hac vice*
Justin M. Swartz, *pro hac vice*
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

*Attorneys for the Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO / OAKLAND DIVISION

RENEE FASSBENDER AMOCHAEV, DEBORAH ORLANDO, KATHRYN N. VARNER, IVY SO and LISA STRANGE WEATHERBY on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

CITIGROUP GLOBAL MARKETS, INC., d/b/a SMITH BARNEY,

Defendant.

Case No. 3:05-cv-0198-PJH

**FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES FOR VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, and the CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

**DEMAND FOR JURY TRIAL**

Individual and Representative Plaintiffs Renee Fassbender Amochaev, Deborah Orlando, Kathryn Varner, Ivy So and Lisa Strange Weatherby (collectively "Plaintiffs") on behalf of themselves and all others similarly situated, allege, upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

**NATURE OF THE CLAIM**

1. Defendant Citigroup Global Markets, Inc., d/b/a Smith Barney (hereinafter "Smith Barney") is an investment brokerage retail firm that discriminates against female Financial Advisors on the basis of gender with respect to business opportunities, compensation, professional support and other terms and conditions of employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, the California Fair Employment and Housing Act, Cal. Gov't Code § 12940 *et seq*. and the Florida Civil Rights Act of 1992, F.S.A. § 760.01 *et seq.* Smith Barney is the retail brokerage arm of Citigroup, the largest financial institution in the United States.

2. The violations are systemic, based upon company-wide policies and practices, and the result of unchecked gender bias that pervades the corporate culture of Smith Barney. They are not isolated or exceptional incidents, but rather the regular and predictable result of Defendant's company-wide policies and practices. Smith Barney's policies and practices with regard to the distribution of the business opportunities and investment accounts under its control deny qualified female Financial Advisors equal opportunities for compensation.

3. As a result of Smith Barney's company-wide policies and practices, female Financial Advisors (also called "FAs" or "brokers") have earned substantially less than similarly situated male FAs. This earnings disparity, which Smith Barney caused by reckless indifference and/or intentional conduct, has existed every year throughout the liability period in this case and is part of a pattern or practice of intentional discrimination.

4. Smith Barney, through its conduct throughout the liability period, has caused these gender-based earnings disparities by intentionally (1) implementing company-wide policies and practices that lock in and enlarge pre-existing gender-based earnings disparities that

Smith Barney intentionally caused; (2) implementing policies and practices that cause a "cumulative advantage" effect by which even small advantages that men have received are exponentially magnified over time, causing the "rich (men) to get richer;" and (3) implementing company-wide policies and practices that have allowed and encouraged Smith Barney managers to favor male brokers over female brokers in handing out business opportunities, which result in increased opportunities to earn compensation.

5. Smith Barney has intentionally implemented these company-wide policies and practices, and maintained its discriminatory compensation system, in order to keep male brokers at the top of the compensation scale and female brokers at the bottom. Even some of Smith Barney's company-wide policies and practices that are facially neutral have an adverse impact on the compensation of female brokers.

***Smith Barney's Policies Lock In and Perpetuate Past Discrimination***

6. Smith Barney's company-wide policies and practices lock in and perpetuate past discrimination because, at Smith Barney, past performance is one of the primary criteria for handing out business opportunities.

a. Smith Barney measures FAs past performance by two primary metrics: "production" and "assets under management."

b. "Production" is the amount of revenue that an FA generates for Smith Barney, usually stated over a 12 month period.

c. "Assets under management" is the value of the assets in the client investment accounts that Smith Barney has assigned to the FA. Production is a function of assets under management – the more assets assigned to an FA, the more production the FA can generate.

d. An FA's production from year-to-year can be predicted by looking at her assets under management.

7. Using past performance as a criterion for handing out business opportunities at Smith Barney has the purpose and effect of discriminating against female Smith

Barney brokers.

8.      Smith Barney has a history of discriminating against female employees, including female FAs.  Throughout the years at Smith Barney (both before and during the liability period in this case), Smith Barney's gender discrimination has caused female brokers to accumulate fewer assets than similarly situated men, produce less than similarly situated men, and, therefore, earn less than similarly situated men.

9.      By continually basing decisions regarding the distribution of future business opportunities on criteria tainted by gender discrimination, Smith Barney has created a "head wind" that has kept, and continues to keep, female FAs from achieving compensation equality.

10.      According to its company-wide policies and practices, Smith Barney uses past performance as a criterion in distributing business opportunities.  These business opportunities include, but are not limited to: (1) leads, referrals, walk-ins, call-ins, and accounts from departing brokers' books (collectively "account distributions"); (2) partnership and retirement opportunities; (3) pay-out rate and other benefits in the Smith Barney compensation plan; and (4) sales assistance, titles, office space, and other opportunities for brokers to increase their income.

***Smith Barney's Policies and Practices Cause a "Cumulative Advantage" Effect***

11.      By unfairly relying on past performance as a basis for distributing current business opportunities, Smith Barney's current policies and practices have caused small year-to-year advantages (advantages that Smith Barney created by favoring male brokers over female brokers) to grow and accumulate over time, increasing the inequality between male brokers' and female brokers' compensation.

12.      In other words, Smith Barney's policies and practices, implemented during the liability period in this case, create a "cumulative advantage" effect, under which "the rich get richer" and "success breeds success." As a result, female brokers who were disadvantaged by Smith Barney's discriminatory policies and practices earlier in their careers cannot catch up.

13.     This is not accidental.  Smith Barney has deliberately implemented policies and practices in order to perpetuate and increase the disparities its past discrimination caused and to maintain a system designed to keep male brokers at the top, resulting in a "vicious cycle" for female brokers.

14.     *Account Distributions.* Smith Barney's company-wide account distribution policy is an example of cumulative advantage effect at work.

a.     Smith Barney pays its Financial Advisors primarily on a commission basis, calculated based on the revenue generated from the investment accounts assigned to them.  Smith Barney may assign investment accounts to a broker when individuals with new business call into or walk into the office; through "leads" and "referrals" (e.g., when Smith Barney tells Financial Advisor of a possible account opportunity and the Financial Advisor makes contact with the potential account holder); by transfer from one Financial Advisor to another (e.g., when a Financial Advisor retires, leaves the business, or moves to another firm); or through partnerships between Financial Advisors within an office (or branch).

b.     But accounts and potential accounts are not simply "acquired" by brokers in a vacuum, outside the control of Smith Barney.  In fact, Smith Barney has implemented a companywide policy for account distribution that delegates discretion to allocate or distribute accounts, as well as opportunities to gain new accounts, to its virtually all-male branch management.  Because brokers obtain so many accounts through the distribution process rather than on their own initiative, account distribution is a substantial factor affecting the compensation of Smith Barney Financial Advisors.

c.     Smith Barney's company-wide policy and practice directs branch management to consider past performance (the results of historical discrimination), as well as branch management's own preferences, in distributing accounts to Financial Advisors.

d.     When a male broker receives a client investment account, the selected broker gains much more than the value of the client investment account or the revenue that the client investment account can generate.  The selected broker also gains the growth

potential of the assets in the client account and the growth potential of the account's production. And not only do the accounts grow in value, but they spawn other accounts, which, in turn spawn other accounts, as each client refers other individuals who have money to invest. This exponentially increases the selected brokers' assets under management and production – and therefore his compensation. Smith Barney has disproportionately selected male brokers for income-increasing opportunities under its compensation system.

      e.     This is the point at which Smith Barney's policies create the cumulative advantage effect. As explained above, it is Smith Barney's nationwide policy, which it has applied to all brokers in all Smith Barney branches throughout the liability period, to base its account distribution decisions, in part, on past performance (as measured by assets under management and production). By disproportionately giving accounts to male brokers, Smith Barney has disproportionately placed male brokers in positions to qualify for additional accounts under Smith Barney's company-wide account distribution policy, and to qualify for other business opportunities under Smith Barney's other policies and practices. These additional accounts and business opportunities directly and indirectly increase the male brokers assets under management and production, and place male brokers in an even better position for the next round of account distributions.

      f.     In this way, male brokers' advantage – an advantage that Smith Barney itself created – breeds a further advantage, creating a "cumulative advantage" effect.

      g.     Because Smith Barney has historically favored male brokers for account distributions and other business opportunities, and male brokers therefore have higher production than female brokers, the Smith Barney policies and practices that cause the cumulative advantage effect discriminate against female brokers. The earnings disparity between men and women increases and women cannot catch up.

      15.     *Partnership and Retirement Opportunities.* Smith Barney's nationwide policies and practices regarding partnerships are another example of cumulative advantage at work.

a.     According to Smith Barney's nationwide policies and practices, past performance is a key factor in deciding which brokers are allowed to enter into partnerships with other brokers, which brokers are encouraged to do so, and how assets and production are divided in partnerships.

b.     The ability to enter into partnerships with other brokers, including the ability to take advantage of the Franchise Protection Program (a program under which younger brokers "inherit" entire books of business from older retiring brokers, which is profitable for the inheriting broker and the retiring broker), allows brokers to increase their earnings.

c.     By using past performance as a criterion, Smith Barney's company-wide policies and practices discriminate against female brokers with respect to partnerships and the opportunities they create.  This prevents female brokers from increasing their assets under management and production to the same extent that similarly situated male brokers are able to, and excludes them from future opportunities including partnership opportunities, account distributions, and other business opportunities – continuing the cumulative advantage vicious cycle.

16.     *Compensation Plan.*  Smith Barney's nationwide compensation plan also discriminates against women by causing the cumulative advantage effect to depress female brokers' earnings compared to their male counterparts.

a.     Smith Barney pays its brokers according to a compensation grid set out in the nationwide compensation plan.

b.     The compensation grid determines the percentage of a broker's production that the broker takes home as earnings.

c.     The compensation grid is a "progressive grid" – the higher a broker's production during the prior year, the higher the percentage of that production the broker receives as compensation.

d.     Because the production of female brokers is lower than that of similarly situated male brokers due to Smith Barney's gender discrimination, the compensation

grid dictates that Smith Barney pay male brokers at a higher rate than similarly situated female brokers for performing the same work.

e.      Smith Barney has known that its compensation plan has favored male brokers throughout the class period.  Smith Barney's compensation plan has the purpose and effect of favoring male brokers.

f.      Smith Barney has issued a new compensation plan each year throughout the class period.

g.      Each year of the liability period, the compensation plan has worked to the advantage of male brokers.

h.      The Smith Barney compensation plan, including the grid, has applied to all brokers in all Smith Barney branches throughout the liability period.

i.      In addition to the grid, other aspects of the Smith Barney compensation plan also have the purpose and effect of discriminating against female FAs including, but not limited to, bonuses, stock awards, recognition programs, deferred compensation, and other benefits.

***Smith Barney's Company-Wide Policies Cause Branch Management to Discriminate Against Female Brokers***

17.      Smith Barney has adopted and implemented company-wide policies and practices that have caused Smith Barney managers to favor male brokers over female brokers in doling out business opportunities, which has hindered female brokers' ability to increase their compensation.

18.      In addition to requiring branch management to consider past performance as a criterion (as explained above), these company-wide policies and practices give branch management extraordinary discretion to distribute business opportunities as they choose, allowing their gender stereotypes and the company-wide culture of gender discrimination to influence their decisions.  As a result, Smith Barney's policy and practice is to distribute accounts and business opportunities to male Financial Advisors in numbers greatly disproportionate to those distributed

to similarly-situated female Financial Advisors. This policy and practice has the purpose and effect of systematically discriminating against female Financial Advisors.

19.     In addition, pursuant to Smith Barney's company-wide policies and practices, branch management often encourages male brokers to form lucrative partnership agreements without adequate oversight or equal opportunity protections, subject only to rubber-stamp approval by upper management. Smith Barney treats women less favorably with respect to partnerships and the division of assets and production therein. These discriminatory policies and practices have the purpose and effect of systematically discriminating against female Financial Advisors at Smith Barney and preventing them from increasing their compensation.

***Smith Barney Refuses to Change Policies and Practices it Knows Discriminate Against Women***

20.     As troubling as these discriminatory policies and practices are, more disturbing still is the cavalier way in which Smith Barney has treated the subject of sex discrimination, its female brokers, and even its own legally binding promises. Indeed, while Defendant Citigroup nominally embraces a corporate credo for Smith Barney and its subsidiaries that states, "We have worked hard to create a workplace with an emphasis on inclusion, innovation and merit, each rooted in our shared values and respect for our colleagues and the millions of people we serve," these statements of inclusion are belied by Smith Barney's exclusionary practices. It is also indisputable that Smith Barney is aware of its discriminatory policies and practices, as this lawsuit does not represent the first time such problems have been brought to light. Smith Barney was a defendant in a previous class action gender-discrimination lawsuit.

21.     In 1997, the Company entered into a settlement agreement to resolve a previous sex-discrimination class action lawsuit. In that agreement Smith Barney pledged, *inter alia*, that it would develop non-discriminatory standards for account distribution, as well as a system to ensure that employees who lodged complaints of sex discrimination were not subjected to retaliation for doing so. But within only a few years of that settlement, the Company has been

utilizing a discriminatory account distribution system and has retaliated against, and constructively discharged, female Financial Advisors – including Plaintiffs here – for attempting to raise sex-discrimination issues within the Company.  Smith Barney's continuing discrimination and retaliation are not only illegal, but also reflect egregious violations of the promises Smith Barney previously made to its female employees and to a court of law.  Clearly, Smith Barney has not learned from its earlier mistakes or court orders.  Indeed, it now continues to violate the rights of its female Financial Advisors – including the very women who have attempted, within the Company's internal procedures, to remind the Company of its own pledge to take sex discrimination seriously.

22.    Even after Smith Barney was given clear notice, through the prior lawsuit and otherwise, that its policies and practices caused female brokers to earn less than male brokers, it continued to implement many of these policies.  It did so in order to perpetuate and continue to increase the disparity in earnings between male and female brokers.

23.    Similarly, despite Smith Barney's knowledge that, under prior versions of its compensation plan, men consistently earned more than women (because of Smith Barney's intentional discrimination), Smith Barney continued to design and implement compensation plans that included the same criteria and had the same discriminatory effect.

24.    Smith Barney also created a written account distribution policy after the 1997 gender-discrimination class action settlement and implemented it during the liability period in this case.  This policy formalized Smith Barney's existing account distribution policies and practices, even though the company knew that these policies and practices had caused a huge gender-based earnings disparity.  Smith Barney implemented the policy during the liability period in this case, in order to continue to favor male brokers.  The policy, while facially neutral, also has an adverse impact on female brokers and favors male brokers.

25.    Moreover, Smith Barney has a poorly functioning, understaffed, and impotent human resources department that focuses almost exclusively (if not completely) on defending the company as a litigant, rather than on resolving gender-based problems and rooting

out discrimination.  Smith Barney has intentionally run its human resources department in this manner in order to maintain the *status quo* and to further its goal of favoring male employees over female employees.

26.     Accordingly, this class action is brought by female Financial Advisors on behalf of themselves individually and all similarly-situated female Financial Advisors in the United States against whom Smith Barney has discriminated on the basis of gender.  This action seeks to end Smith Barney's discriminatory policies and/or practices and to make the Plaintiff class whole by requesting the following remedies: injunctive relief to remedy systemic sex discrimination at Smith Barney; an award of back pay and front pay; and compensatory and punitive damages.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

27.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

28.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).  Members of the Plaintiff class reside in California and throughout the United States.  Defendant Smith Barney is a Delaware corporation licensed to do business in California.  It has branch offices throughout California and this District.  Many of the acts complained of occurred in this State and this District and gave rise to the claims alleged.

29.     Assignment to the San Francisco/Oakland Division of this Court is proper because the Plaintiffs reside within the Division and many of the acts complained of took place in this Division.

## PARTIES

30.     Plaintiff Renee Fassbender Amochaev is a female resident of Santa Rosa, California.  During the course of her employment as a Financial Advisor at Smith Barney, by application of its company-wide policies and practices, Smith Barney denied Ms. Fassbender Amochaev business opportunities on the basis of her gender that directly impacted her compensation.  Smith Barney retaliated against Ms. Fassbender Amochaev for complaints of gender discrimination, and constructively discharged her.

31.     Plaintiff Deborah Orlando is a female resident of Santa Rosa, California. During the course of her employment as a Financial Advisor at Smith Barney, Smith Barney, by application of its company-wide policies and practices, denied Ms. Orlando business opportunities on the basis of her gender that directly impacted her compensation.  Smith Barney retaliated against Ms. Orlando for complaints of gender discrimination, and constructively discharged her.

32.     Plaintiff Kathryn Varner is a female resident of Santa Rosa, California. During the course of her employment as a Financial Advisor at Smith Barney, Smith Barney, by application of its company-wide policies and practices, denied Ms. Varner business opportunities on the basis of her gender that directly impacted her compensation.  Smith Barney retaliated against Ms. Varner for complaints of gender discrimination, and constructively discharged her.

33.     Plaintiff Ivy So is a female resident of Glendale, California who is of Filipino origin and race.  During the course of her employment as a Financial Advisor at Smith Barney, Smith Barney, by application of its company-wide policies and practices, denied Ms. So business opportunities on the basis of her gender, race and national origin that directly impacted her compensation.

34.     Plaintiff Lisa Strange Weatherby is a female resident of Jacksonville, Florida.  Ms. Weatherby is currently employed as a Financial Advisor in the Jacksonville office of Smith Barney.  During the course of her employment, Smith Barney, by application of its company-wide policies and practices, has denied Ms. Weatherby business opportunities on the basis of her gender that directly impact her compensation.  Smith Barney has also retaliated against Ms. Weatherby for complaints of gender discrimination.

35.     Smith Barney is a division of Citigroup Global Markets, Inc.

36.     Citigroup Global Markets, Inc. is a subsidiary of Citigroup.

37.     Smith Barney is a global financial firm, which provides brokerage and investment banking management services to corporations, governments and individuals around the world.  Smith Barney is the nation's second largest retail brokerage firm and a leader in the

U.S. securities industry.  Smith Barney's Private Client and Global Equity Research businesses comprise the Global Wealth Management unit of Citigroup Global Markets, Inc., a subsidiary of Citigroup.  Smith Barney employs approximately 12,000 Financial Advisors in over 500 offices.

38.     Citigroup, Inc. ("Citigroup" and, together with its subsidiaries, "the Company"), is a diversified global financial services holding company whose businesses provide a broad range of financial services to consumer and corporate customers.  Citigroup is a Fortune 500 company with more than 200 million customer accounts doing business in over 100 countries.  It is also the largest financial institution in the United States.  As of December 2004, it had approximately 141,000 full-time and 7,000 part-time employees in the United States and approximately 146,000 full-time employees outside the United States.  In addition, Citigroup reported revenues over $86 billion, a net income of $17 billion, assets of $1 trillion and a market value of  $211 billion.  Currently, Citigroup has over 3,000 bank branches and consumer finance offices in the United States and Canada, plus an additional 1,500 locations in approximately 100 other countries.

**CLASS ACTION ALLEGATIONS**

39.     Plaintiffs bring this Class Action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of a Class of all female Financial Advisors employed by Smith Barney in the United States at any time from August 30, 2003 and continuing to the present.  Plaintiffs also bring this Class Action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of a Subclass of all female Financial Advisors employed by Smith Barney in California at any time from June 25, 2003 and continuing to the present.  Plaintiffs reserve the right to amend the definitions of the Class and Subclasses based on discovery or legal developments.

40.     Plaintiffs are members of the Class they seek to represent.

41.     The members of the Class identified herein are so numerous that joinder of all members is impracticable.  As of the filing of this Complaint, Smith Barney has approximately 12,000 Financial Advisors.  Although the precise number of female Financial Advisors is currently unknown, it is far greater than can be feasibly addressed through joinder.

42.     There are questions of law and fact common to the Class, and these questions predominate over any questions affecting only individual members.  Common questions include, among others:  (1) whether Smith Barney's policies or practices discriminate against female Financial Advisors; (2) whether Smith Barney's Human Resources Department has failed to implement policies and procedures to prevent retaliation against employees who challenge perceived bias in the workplace; (3) whether Smith Barney's policies and practices violate Title VII and/or the California Fair Employment and Housing Act; and (4) whether equitable remedies, injunctive relief, compensatory, and punitive damages for the Class are warranted.

43.     The Representative Plaintiffs' claims are typical of the claims of the Class.

44.     The Representative Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiffs have retained counsel competent and experienced in complex class actions, employment discrimination litigation, and the intersection thereof.

45.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Smith Barney has acted and/or refused to act on grounds generally applicable to the class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole.  The Class members are entitled to injunctive relief to end Smith Barney's common, uniform, unfair and discriminatory policies and practices.

46.     Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The Class members have been damaged and are entitled to recovery as a result of Smith Barney's common, uniform, unfair, and discriminatory policies and practices.  Smith Barney has computerized account data, payroll and personnel data that will make calculation of damages for specific Class members relatively simple.  The propriety and amount of punitive damages are based on the conduct of the

Defendant, making these issues common to the Class.

**GENERAL POLICIES OR PRACTICES OF DISCRIMINATION**

47. The denials and abridgments of employment opportunities suffered by the Representative Plaintiffs are part of a general policy or practice of discrimination on the basis of gender in employment that has existed at Smith Barney throughout the relevant time period. These are not isolated examples of employment practices or individual decisions. On the contrary, these incidents are representative of Smith Barney's systematic discrimination against female Financial Advisors in favor of male Financial Advisors.

48. Because virtually all indicia of success, advancement, and achievement at Smith Barney are based on the total dollar amount of assets a Financial Advisor manages and/or the amount s/he has produced that year, the ability to acquire new and lucrative accounts is essential to a Financial Advisor's success in the business. Promotions and recognition programs at Smith Barney are also based on a Financial Advisor's gross production, total assets, or both. For example, officer titles, such as "First Vice President," are awarded for a particular year if a Financial Advisor reaches a certain dollar amount in gross production during that year. Receiving such a title also may entitle a Financial Advisor to increased opportunities for account allocations, thus multiplying the disparities.

49. Despite the significance of the account distribution system, the nationwide account distribution policy discriminates against women. It perpetuates the historical exclusion of women from fair participation in account distributions and permits excessive subjectivity by branch management in account assignment. This is a uniform practice across Smith Barney offices. At every Smith Barney branch, branch management is required to follow this company policy to make account assignments. Using data that is flawed by the historical discrimination against women and branch management's personal preferences, Smith Barney distributes call-ins, walk-ins, leads, and referrals to Financial Advisors within each branch. By entrusting branch management, virtually all of which is male, with undue discretion in these matters, Smith Barney maintains a system whereby branch management applies its own personal preferences and biases

in making distribution decisions.

50.     Smith Barney has pursued policies or practices on a continuing basis that have denied or restricted the availability of business opportunities, compensation, and other favorable employment conditions to qualified female Financial Advisors.  Such discriminatory policies or practices include, without limitation:

a.     Systematically discriminating against women in allocating accounts and business opportunities that impact their opportunities for increased compensation, including, but not limited to, leads, call-ins, walk-ins, accounts from departing brokers' books, partnership opportunities, and other sources of business;

b.     Systematically discriminating against women in the provision of sales and professional support that impact their opportunities for increased compensation;

c.     Relying upon unweighted, subjective, gender-based and/or arbitrary criteria utilized by a nearly all-male managerial workforce in making business allocation decisions that directly impact compensation;

d.     Establishing and maintaining an arbitrary and subjective policy or system regarding business allocation that has had the effect of denying compensation to qualified women;

e.     Failing and refusing to take reasonable and adequate steps to eliminate the effects of Defendant's past discriminatory practices;

f.     Permitting retaliation against employees who complain of gender discrimination in the workplace;

g.     Failing to provide women with the same quality and quantity of training and mentoring as is provided to men;

h.     Failing to provide women with the same level of sales support, administrative support, and other support as is provided to men;

i.     Maintaining a compensation system that perpetuates past discrimination;

j. Denying women opportunities to increase their commissions and other earnings;

k. Maintaining a discriminatory and gender-biased corporate culture; and

l. Making employment decisions based on gender stereotypes.

## CLAIMS OF REPRESENTATIVE PLAINTIFFS

### Renee Fassbender Amochaev

51. Plaintiff Renee Fassbender Amochaev worked as a Financial Advisor from March 2000 to July 23, 2004 in the Santa Rosa, California office of Smith Barney. During the course of her employment, Smith Barney denied her compensation, business opportunities, titles and other conditions of employment made available to similarly-situated male Financial Advisors.

52. Since the beginning of her employment with Smith Barney, Ms. Fassbender Amochaev has been denied books of business that she was qualified to receive or maintain on multiple occasions. For example, in or around June 2003, Smith Barney distributed a portion of Ms. Fassbender Amochaev's book of business worth $1,634,000.00 to a male Financial Advisor with no greater qualifications than Ms. Fassbender Amochaev. Similar instances have happened since the beginning of her employment, including but not limited to: (1) in approximately July 2003, Smith Barney distributed a book of business worth $275,000.00 to a similarly-situated male Financial Advisor; (2) in approximately September 2003, Smith Barney distributed a book of business worth $102,000.00 to a similarly-situated male Financial Advisor; (3) in approximately November 2003, Smith Barney distributed a book of business worth $250,000.00 to a similarly-situated male Financial Advisor; (4) in approximately January 2004, Smith Barney distributed a book of business worth $4,122,000.00 to a similarly-situated male Financial Advisor; (5) in approximately May 2004, Smith Barney distributed a book of business

worth $415,000.00 to a similarly-situated male Financial Advisor; and (6) in approximately July 2004, Smith Barney distributed a book of business worth at least $6,912,989.00 (and worth as much as approximately $11,500,000.00) to a similarly-situated male Financial Advisor. If Ms. Fassbender Amochaev had not been denied these accounts, she would have generated compensation worth approximately several hundred thousand dollars.

53. In this same time period, Smith Barney did not allocate any significant walk-in or call-in business to Ms. Fassbender Amochaev, while it did allocate such business to similarly-situated male Financial Advisors. Smith Barney denied Ms. Fassbender Amochaev these opportunities due to her gender.

54. As a result of, and/or in addition to, the gender discrimination described above, Smith Barney engaged in gender discrimination against Ms. Fassbender Amochaev in other ways, including, but not limited to, the following:

a. Smith Barney denied Ms. Fassbender Amochaev the opportunity to use the title “Portfolio Manager,” which was reserved for Financial Advisors who had completed additional training and who managed at least 10 accounts that totaled at least $5,000,000.00 in assets. Had Smith Barney not denied her business based on her gender, Ms. Fassbender Amochaev would have been able to use the title “Portfolio Manager” because she had achieved all the other qualifications for the title.

b. Smith Barney denied Ms. Fassbender Amochaev the opportunity to use the title “First Vice President.” This title was reserved for Financial Advisors who had in excess of $250,000 in gross production, which Smith Barney prevented Ms. Fassbender Amochaev from achieving by treating her differently than similarly-situated males.

c. While Smith Barney provided appropriate sales support to similarly-situated male Financial Advisors, it denied such support to Ms. Fassbender Amochaev;

d. While Smith Barney assigned similarly-situated male Financial Advisors to offices with windows, it assigned Ms. Fassbender Amochaev to a less desirable office without a window; and

e. While Smith Barney provided training opportunities to similarly-situated male Financial Advisors, Smith Barney did not make the same opportunities available to Ms. Fassbender Amochaev.

55. Smith Barney denied all of these opportunities to Ms. Fassbender Amochaev because of her gender.

56. Smith Barney subjected Ms. Fassbender Amochaev to a hostile work environment after she complained about unfair, discriminatory treatment to the highest levels of the company, including to the Director of Human Resources of Smith Barney. Smith Barney refused to address her complaints and retaliated against her. For example, shortly after Ms. Fassbender Amochaev lodged her complaints of discrimination, her manager threatened to take away several of her accounts and replaced her sales assistant with someone less qualified. Smith Barney management also disclosed the fact that she had complained about discrimination to her male co-workers and allowed a petition to be circulated in Ms. Fassbender Amochaev's office attacking her complaints. Despite Ms. Fassbender Amochaev's protests, no one was disciplined for this retaliation.

57. As a result of the discrimination and retaliation, Smith Barney constructively discharged Ms. Fassbender Amochaev from her employment with Smith Barney on July 23, 2004, which caused her to lose earned stock option awards valued at approximately $32,000.00.

58. Smith Barney has discriminated against Ms. Fassbender Amochaev on the basis of her gender by denying her business opportunities that directly impacted her compensation, constructively discharging her, and retaliating against her for her complaints of gender discrimination.

59. On or about June 25, 2004, Ms. Fassbender Amochaev filed a charge of discrimination with the California Department of Fair Employment and Housing ("DFEH") and the Equal Employment Opportunity Commission ("EEOC"). On or about September 2, 2004, Ms. Fassbender Amochaev filed an amended charge of discrimination. The charge was amended

again on March 24, 2005.  On March 25, 2005, she received a Notice of Right to Sue from the DFEH.  She has requested a Notice of Right to Sue from the EEOC.  Her charge, amended charges, and Notice of Right to Sue from the DFEH are attached to this Complaint as Exhibit A and are incorporated by reference.

**Deborah Orlando**

60.     Plaintiff Deborah Orlando was employed as a Vice President/Financial Advisor in the Santa Rosa, California office of Smith Barney from February 14, 1998 to July 23, 2004.  During the course of her employment, Smith Barney denied Ms. Orlando business opportunities and compensation that it made available to similarly-situated male Financial Advisors.

61.     Smith Barney has discriminated against Ms. Orlando on the basis of her gender by denying her business opportunities that directly impacted her compensation.  For example, on multiple occasions between June 2003 and July 2004, Smith Barney transferred significant assets to similarly-situated male Financial Advisors that were not offered to Ms. Orlando.  In this same time period, Smith Barney likewise did not allocate any significant walk-in or call-in business to Ms. Orlando, while it did allocate walk-in and call-in business to similarly-situated male Financial Advisors.  Smith Barney denied all of these opportunities to Ms. Orlando due to her gender.

62.     As a result of, and/or in addition to, the gender discrimination described above, Smith Barney engaged in gender discrimination against Ms. Orlando in other ways, including, but not limited to, the following:

a.     While Smith Barney gave other similarly-situated male Financial Advisors training opportunities, Smith Barney did not make the same opportunities available to Ms. Orlando.

b.     Smith Barney assigned Ms. Orlando to a less desirable office than it assigned similarly-situated male employees.

63.    Although Ms. Orlando complained about unfair, discriminatory treatment to the company's corporate office, Smith Barney did not address her complaints.  Instead, Smith Barney subjected her to a hostile work environment, disclosed the fact that she had complained to male co-workers, and retaliated against her for having made the complaints.  As a result of the discrimination and retaliation, Smith Barney constructively discharged Ms. Orlando from her employment with Smith Barney on July 23, 2004.  The constructive discharge caused Ms. Orlando to lose approximately $70,000 in income and approximately ten percent of the assets she managed.

64.    Smith Barney has discriminated against Ms. Orlando on the basis of her gender by denying her business opportunities that directly impacted her compensation, constructively discharging her, and retaliating against her for her complaints of gender discrimination.

65.    On or about September 17, 2004, Ms. Orlando filed a charge of discrimination with the DFEH and the EEOC.  On or about March 29, 2005, Ms. Orlando filed an amended charge of discrimination.  On March 29, 2005, Ms. Orlando received a Notice of Right to Sue from the DFEH.  Her charge and amended charge of discrimination and Notice of Right to Sue are attached to this Complaint as Exhibit B and are incorporated by reference.  Ms. Orlando has requested a Notice of Right to Sue from the EEOC.

**Kathryn Varner**

66.    Plaintiff Kathryn Varner was employed as a Financial Advisor in the Smith Barney office in Modesto, California starting in 1988.  She worked there continually until 1991, when she became a Financial Advisor in the Santa Rosa, California office of Smith Barney.  In 1993, she was made a Vice President.  She was employed by Smith Barney until July 16, 2004.  During the course of her employment, Smith Barney denied her business opportunities and compensation made available to similarly-situated male Financial Advisors.

67.    Smith Barney has discriminated against Ms. Varner on the basis of her

gender by denying her business opportunities that directly impacted her compensation.  For example, on multiple occasions between June 2003 and July 2004, Smith Barney transferred significant assets to similarly-situated male Financial Advisors that were not offered to Ms. Varner.  In this same time period, Smith Barney likewise did not allocate any significant walk-in or call-in business to Ms. Varner, while it did allocate walk-in and call-in business to similarly-situated male Financial Advisors.  Smith Barney denied Ms. Varner all of these opportunities due to her gender.

68.     In March or April, 2004, Ms. Varner complained of gender discrimination to the Smith Barney Human Resources Department. Although Ms. Varner complained about the unfair, discriminatory treatment she had experienced to the Regional Human Resources Director, Smith Barney failed to address her complaints.  Instead, Smith Barney disclosed the fact that she had complained to her male coworkers and  retaliated against her for making such complaints. As a result of the discrimination and retaliation, Smith Barney constructively discharged Ms. Varner from her employment on July 16, 2004.  Ms. Varner lost at least $50,000 in commission as a result of being constructively discharged.

69.     Smith Barney discriminated against Ms. Varner on the basis of her gender by denying her business opportunities that directly impacted her compensation, constructively discharging her, and retaliating against her for her complaints of gender discrimination.

70.     On or about November 22, 2004, Ms. Varner filed a charge of discrimination with the DFEH and the EEOC.  Ms. Varner received a Notice of Right to Sue from the DFEH on March 30, 2005.  Attached to this Complaint as Exhibit D, and incorporated by reference, are copies of her charge and Notice.  Ms. Varner has requested a Notice of Right to Sue from the EEOC.

**Ivy So**

71.     Plaintiff Ivy So was employed as a Financial Advisor in the Glendale, California office of Smith Barney from February 2001 until approximately August 4, 2006.

During the course of her employment, Smith Barney denied Ms. So business opportunities and compensation that it made available to similarly-situated male Financial Advisors.

72.    Ms. So is a woman of Filipino origin.  Throughout the course of her employment, Smith Barney denied Ms. So business opportunities and compensation that it made available to similarly situated non-minority employees who were born in the United States.

73.    For example, on or about August 2005, a male Financial Advisor resigned from the Glendale office of Smith Barney.  Smith Barney primarily distributed his accounts to male Financial Advisors who were similarly-situated to Ms. So.  Only one account was distributed to Ms. So from his book of business.  Smith Barney only distributed that account to her after the client had decided to move the account to a different company.

74.    Likewise, on or about April 2006, Smith Barney distributed an account from a departing broker to a less qualified non-minority broker of United States origin instead of Ms. So.

75.    Smith Barney permitted similarly situated, non-minority male brokers of United States origin in the Glendale, California office to form partnerships in order to improve their compensation.  Smith Barney did not permit Ms. So to enter into a partnership.  As a result, Smith Barney diminished her compensation in comparison to similarly situated male, non-minority Financial Advisors of United States origin.

76.    Smith Barney disproportionately distributed Initial Public Offerings to similarly situated, non-minority male brokers of United States origin.  Specifically in September 2005, Smith Barney made disproportionate IPO distributions to another similarly-situated non-minority male, broker of United States origin.

77.    Smith Barney also denied Ms. So other terms and conditions of employment that affect her compensation that it did not deny to similarly-situated male, non-minority brokers of United States origin.  For example, Smith Barney moved Ms. So out of her office in March 2006 and placed her in the "bull pen."  The bull pen is the area in which new brokers are required to work.  Smith Barney gave Ms. So's office to a male, non-minority broker

of United States origin with only one year of experience.  At the same time, Smith Barney did not require other male, non-minority American-born brokers who were less qualified than Ms. So to move out of their offices and into the bull pen.

78.     On or about September 2005, Smith Barney reduced Ms. So's sales support, which negatively impacted her business and limited her ability to generate income. Smith Barney did not reduce the sales support of any similarly-situated, non-minority male brokers or brokers of United States origin.

79.     Smith Barney discriminated against Ms. So on the basis of her gender, race and national origin by denying her business opportunities that directly impacted her compensation.

80.     In approximately March 2006, Ms. So complained of gender discrimination to Smith Barney's Human Resources Department. Although Ms. So complained about the unfair, discriminatory treatment she had experienced, Smith Barney failed to address her complaints.

81.     On or about June 29, 2006, Ms. So filed a charge of discrimination with the DFEH alleging gender and national origin discrimination.  On or about July 3, 2006, the DFEH issued a Notice of Right to Sue to Ms. So on those claims.  On or about August 2, 2006, Ms. So filed a charge of discrimination with the EEOC alleging gender, race and national origin discrimination. On September 6, 2006, the DFEH issued a Notice of Right to Sue regarding her claim of race discrimination. Attached to this Complaint as Exhibit C, and incorporated by reference, are copies of her charges filed with the DFEH, her Notices of Right to Sue from the DFEH and her charge of discrimination filed with the EEOC.  Ms. So's statute of limitations with respect to her claim of gender discrimination was tolled with the filing of Ms. Amochaev's charge of discrimination.

**Lisa Strange Weatherby**

82.     Plaintiff Lisa Strange Weatherby is currently employed as a Financial Advisor in the Jacksonville, Florida office of Smith Barney.  She has been employed at Smith

Barney since March 2000.  She is a Certified Investment Management Analyst and a Certified Investment Strategist and has been designated by Smith Barney as a Senior Investment Management Consultant and a Vice President.

83.     Smith Barney has discriminated against Ms. Weatherby on the basis of her gender by denying her business opportunities that have directly impacted her compensation and that were made available to similarly-situated male Financial Advisors.  For example, in November 2005, Smith Barney allocated a departing broker's account valued at approximately $23 million to a male Financial Advisor even though Ms. Weatherby was more qualified to manage the account and had been instrumental in bringing the account to Smith Barney.  Also, during the course of her employment with Smith Barney, Smith Barney did not distribute any significant accounts from departing or retiring brokers' books of business to Ms. Weatherby, while Smith Barney did allocate such business to similarly situated male Financial Advisors. Smith Barney denied Ms. Weatherby these business opportunities and resulting compensation on the basis of gender.

84.     In or around December 2005, Ms. Weatherby complained to her Branch Office Manager regarding the unfair account distribution. Smith Barney retaliated against her by assigning her to a less desirable office space.  Specifically, Smith Barney forced Ms. Weatherby to move to a part of the office that was occupied by a male broker who had a history of sexually harassing her, knowing of this history and over Ms. Weatherby's objections that she felt unsafe being near him.  Smith Barney also reassigned a Sales Assistant to Ms. Weatherby who she had previously terminated because the Sales Assistant was not competent to service the types of accounts that make up the vast majority of her business.

85.     On or about October 3, 2006, Ms. Weatherby filed a charge of discrimination with the EEOC and the Florida Commission on Human Relations.  Attached to this Complaint as Exhibit E and incorporated by reference are copies of her charges.

**FIRST CLAIM FOR RELIEF**
**(Intentional Discrimination)**
**(Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*)**
**(On Behalf of All Plaintiffs and the Class)**

86.     Plaintiffs incorporate the preceding paragraphs as alleged above.

87.     This Claim is brought by all Representative Plaintiffs on behalf of themselves and the Class they represent.  Plaintiffs have timely filed charges with the EEOC making classwide claims of discrimination as well as individual claims and have exhausted their administrative remedies.  Smith Barney's conduct, as alleged herein, violates Title VII.

88.     Smith Barney has engaged in an intentional company-wide systematic pattern or practice of discrimination against female Financial Advisors.  The discriminatory acts that constitute Smith Barney's pattern or practice of discrimination occurred both within and outside the liability period in this case.

89.     Smith Barney has intentionally maintained a system that locks in, maintains, perpetuates and increases discrimination against female Financial Advisors by implementing company-wide policies and practices that rely heavily on past performance as a criterion for account distributions, partnership opportunities, compensation, and other terms and conditions of employment, and by implementing company-wide policies and practices that are discriminatory, subjective, standardless, and/or arbitrary, and encouraging branch management to rely on their personal preferences and stereotypes to favor male brokers with respect to the distribution of accounts, partnership opportunities, other business opportunities, compensation, and other terms and conditions of employment.  Smith Barney's discriminatory policies or practices described above have denied female Financial Advisors business opportunities and compensation, in the loss of past and future wages and other job benefits, as compared to similarly-situated male Financial Advisors.

90.     Defendant has intentionally discriminated against Plaintiffs and the Class by maintaining a pattern or practice of denying business opportunities that directly affect compensation to qualified female Financial Advisors on the basis of sex.  The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by 42

U.S.C. §§ 2000e *et seq.*

91. It is a violation of Title VII each time Smith Barney delivers a paycheck to a female Financial Advisor that is for a lower amount than it would have been absent Smith Barney's discrimination.

92. The paychecks that female Financial Advisors received during the liability period in this case, for work performed during the liability period in this case, were discriminatorily low because of discriminatory decisions, policies, and practices undertaken during the liability period.

93. Plaintiffs request relief as hereinafter described.

**SECOND CLAIM FOR RELIEF**
**(Disparate Impact Discrimination)**
**(Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*)**
**(On behalf of All Plaintiffs and the Class)**

94. Plaintiffs incorporate the preceding paragraphs as alleged above.

95. This Claim is brought by all Representative Plaintiffs on behalf of themselves and the Class they represent. Plaintiffs have timely filed charges with the EEOC making classwide claims of discrimination as well as individual claims and have exhausted their administrative remedies.

96. Smith Barney has intentionally maintained a system that locks in, maintains, perpetuates and increases discrimination against female Financial Advisors by implementing company-wide policies and practices that rely heavily on past performance as a criterion for account distributions, partnership opportunities, compensation, and other terms and conditions of employment, and by implementing company-wide policies and practices that are discriminatory, subjective, standardless, and/or arbitrary, and encourage branch management to rely on their personal preferences and stereotypes to favor male brokers with respect to the distribution of accounts, partnership opportunities, other business opportunities, compensation, and other terms and conditions of employment. This system, and these policies and practices, have had an adverse impact on female employees and are not, and cannot be, justified by business

necessity. Even if such system could be justified by business necessity, less discriminatory alternatives exist and would equally serve any alleged necessity.

97. Plaintiffs request relief as hereinafter described.

**THIRD CLAIM FOR RELIEF**
**(Gender Discrimination)**
**(California Fair Employment and Housing Act, Cal. Gov't Code §§ 12940 *et seq.*)**
**(On Behalf of Plaintiffs Amochaev, Orlando, Varner and So and the California Subclass)**

98. Plaintiffs incorporate the preceding paragraphs as alleged above.

99. This claim is brought on behalf of Plaintiffs Renee Fassbender Amochaev, Deborah Orlando, Kathryn Varner, Ivy So, and the Subclass of female Financial Advisors from California offices.

100. As described herein, Smith Barney's actions constitute gender discrimination in violation of the California Fair Employment and Housing Act (FEHA). Plaintiffs Renee Fassbender, Deborah Orlando, Kathryn Varner and Ivy So have received Right to Sue letters from the DFEH. The pendency of EEOC investigations into Plaintiffs' charges tolled the time limit for filing civil actions pursuant to the Fair Employment and Housing Act. Plaintiffs have timely complied with all prerequisites to suit. Smith Barney's conduct, as alleged herein, violates FEHA.

101. It is a violation of FEHA each time Smith Barney delivers a paycheck to a female Financial Advisor that is for a lower amount than it would have been absent Smith Barney's discrimination.

102. Smith Barney's gender discrimination during the FEHA liability period is part of a continuing violation that began before the liability period.

103. Plaintiffs request relief as hereinafter provided.

**FOURTH CLAIM FOR RELIEF**
**(Florida Civil Rights Act of 1992, F.S.A. § 760.01 *et seq.)***
**(On Behalf of Lisa Strange Weatherby)**

104. Plaintiff Lisa Strange Weatherby incorporates the preceding paragraphs as alleged above.

105.    This claim is brought on behalf of Plaintiff Lisa Strange Weatherby.

106.    As described herein, Smith Barney's actions constitute gender discrimination in violation of the Florida Civil Rights Act of 1992 ("FCRA").  Plaintiff Lisa Strange Weatherby has filed a charge of gender discrimination with the Florida Commission on Human Relations.  Ms. Weatherby has timely complied with all prerequisites to suit.  Smith Barney's conduct, as alleged herein, violates FCRA.

107.    It is a violation of FCRA each time Smith Barney delivers a paycheck to Ms. Weatherby that is for a lower amount than it would have been absent Smith Barney's discrimination.

108.    Plaintiffs request relief as hereinafter provided.

**FIFTH CLAIM FOR RELIEF**
**(Race and National Origin Discrimination)**
**(Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*)**
**(On behalf of Ivy So)**

109.    Plaintiff Ivy So incorporates the preceding paragraphs as alleged above.

110.    This Claim is brought by Ivy So individually.

111.    Ivy So has filed a timely charge with the EEOC making individual claims of race and national origin discrimination and has thus exhausted her administrative remedies as of the filing of this Amended Complaint.

112.    Smith Barney has maintained a system and/or policies that are discriminatory, subjective, standardless, and/or arbitrary with respect to the distribution of accounts and business opportunities that affect compensation and other terms and conditions of employment.  This system has an adverse impact on minority employees and employees who were not born in the United States.  This system is not, and cannot be, justified by business necessity.  Even if such system could be justified by business necessity, less discriminatory alternatives exist and would equally serve any alleged necessity.

113.    Smith Barney's discriminatory policies or practices, including those described above, have denied minority Financial Advisors and those whose national origin is not

the United States business opportunities and compensation, in the loss of past and future wages and other job benefits, as compared to similarly situated non-minority, United States-born Financial Advisors.

114.    Defendant has intentionally discriminated against Ivy So by maintaining a pattern or practice of denying business opportunities and accounts that directly affect compensation to qualified Financial Advisors on the basis of race and national origin.  The foregoing conduct constitutes illegal, intentional discrimination as unjustified disparate treatment prohibited by 42 U.S.C. §§ 2000e *et seq.*

115.    Plaintiff requests relief as hereinafter described.

**SIXTH CLAIM FOR RELIEF**
**(Race and National Origin Discrimination)**
**(California Fair Employment and Housing Act, Cal. Gov't Code §§ 12940 *et seq.*)**
**(On behalf of Ivy So)**

116.    Plaintiff Ivy So incorporates the preceding paragraphs as alleged above.

117.    This claim is brought on behalf of Plaintiff Ivy So individually.

118.    As described herein, Smith Barney's actions constitute race and national origin discrimination in violation of the California FEHA. The DFEH issued a Notice of Right to Sue to Ivy So with respect to her claims of gender and national origin discrimination on July 3, 2006.  She filed a charge of discrimination based on race on or about August 2, 2006, and received a Notice of Right to sue on her claim of race discrimination on or about September 6, 2006.  Ms. So has timely complied with all prerequisites to suit.

119.    Plaintiff So requests relief as hereinafter provided.

**SEVENTH CLAIM FOR RELIEF**
**(Race Discrimination)**
**42 U.S.C. § 1981**
**(On behalf of Ivy So)**

120.    Plaintiff Ivy So incorporates the preceding paragraphs as alleged above.

121.    This claim is brought on behalf of Plaintiff So only.

122.    The foregoing conduct constitutes intentional racial discrimination in

violation of 42 U.S.C. § 1981.

123. It is a violation of 42 U.S.C. § 1981 each time Smith Barney delivers a paycheck to a non-white Financial Advisor that is for a lower amount than it would have been absent Smith Barney's discrimination.

124. Plaintiff So requests relief as hereinafter provided.

**ALLEGATIONS REGARDING RELIEF**

125. Plaintiffs and the Class they seek to represent have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief sought in this action is the only means of securing complete and adequate relief. Plaintiffs and the Class they seek to represent are now suffering, and will continue to suffer, irreparable injury from Defendant's discriminatory acts and omissions.

126. Smith Barney's actions have caused and continue to cause Plaintiffs and all Class members substantial losses in earnings and other employment benefits.

127. In addition, Representative Plaintiffs and the Class suffer and continue to suffer humiliation, embarrassment, and anguish, all to their damage in an amount according to proof.

128. Smith Barney performed the acts herein alleged with malice or reckless indifference. Plaintiffs and Class members are thus entitled to recover punitive damages in an amount according to proof.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class pray for relief as follows:

129. Certification of the case as a class action on behalf of the proposed Class and the proposed Subclass;

130. Designation of Representative Plaintiffs Renee Fassbender Amochaev, Deborah Orlando, Kathryn Varner, Ivy So and Lisa Strange Weatherby as representatives of the Class; and designation of Plaintiffs Amochaev, Orlando, Varner and So as representatives on

behalf of the California Subclass;

131.    Designation of Representative Plaintiffs' counsel of record as Class counsel;

132.    A declaratory judgment that the practices complained of herein are unlawful and violate 42 U.S.C. §§ 2000e, *et seq.*, the California FEHA, Cal. Gov't Code §§ 12940, *et seq.*, and, with respect to Ms. Weatherby, the Florida Civil Rights Act of 1992, F.S.A. §§ 760.01, et *seq.*;

133.    A preliminary and permanent injunction against Smith Barney and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs, and usages set forth herein;

134.    An order that Smith Barney institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees regardless of gender, and that it eradicate the effects of its past and present unlawful employment practices;

135.    An order restoring Plaintiffs and Class members to their rightful positions at Smith Barney, or in lieu of reinstatements, an order for front pay benefits;

136.    Back pay (including interest and benefits) for individual Plaintiffs and Class members;

137.    All damages sustained as a result of Smith Barney's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

138.    Exemplary and punitive damages in an amount commensurate with Smith Barney's ability to pay and to deter future conduct;

139.    Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

140.    Pre-judgment and post-judgment interest, as provided by law; and

141. Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: November ___, 2006

Respectfully submitted,

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By:______________________________
Kelly M. Dermody

James M. Finberg (State Bar No. 114850)
Kelly M. Dermody (State Bar No. 171716)
Bill Lann Lee (State Bar No. 108452)
Heather H. Wong (State Bar No. 238546)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Elizabeth A. Alexander, *pro hac vice*
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
150 Fourth Avenue, N., Ste. 1650
Nashville, TN 37219-2423
Telephone: (615) 313-9000
Facsimile: (615) 313-9965

Cyrus Mehri, *pro hac vice*
Lisa M. Bornstein, *pro hac vice*
Sandi Farrell, *pro hac vice*
Anna M. Pohl, *pro hac vice*
MEHRI & SKALET, PLLC
1250 Connecticut Ave, N.W., Suite 300
Washington, D.C. 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997

Adam T. Klein, *pro hac vice*
Piper Hoffman, *pro hac vice*
Justin M. Swartz, *pro hac vice*
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

*Attorneys for Plaintiffs*

568291.1 - 33 - FIRST AMENDED CLASS ACTION COMPLAINT

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury as to all issues so triable.

Dated: November___, 2006

Respectfully submitted,

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By:________________________________
Kelly M. Dermody

James M. Finberg (State Bar No. 114850)
Kelly M. Dermody (State Bar No. 171716)
Bill Lann Lee (State Bar No. 108452)
Heather H. Wong (State Bar No. 238546)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Elizabeth A. Alexander, *pro hac vice*
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
150 Fourth Ave., N., Ste. 1650
Nashville, TN 37219-2324
Telephone: (615) 313-9000
Facsimile: (615) 313-9965

Cyrus Mehri, *pro hac vice*
Lisa M. Bornstein, *pro hac vice*
Sandi Farrell, *pro hac vice*
Anna M. Pohl, *pro hac vice*
MEHRI & SKALET, PLLC
1250 Connecticut Ave, N.W., Suite 300
Washington, D.C. 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997

Adam T. Klein, *pro hac vice*
Piper Hoffman, *pro hac vice*
Justin M. Swartz, *pro hac vice*
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

*Attorneys for the Plaintiffs*